R. BRUCE OWENS, ISB #3315
REGINA M. MCCREA, ISB # 6845
OWENS & CRANDALL
8596 N. Wayne Drive, Suite A
Hayden, Idaho 83835
Telephone: (208) 667-8989
Facsimile: (208) 667-1939
E-mail: regina@cdalawyer.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTINA KELLY, an individual, <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a foreign insurer, <br><br> Defendant. | Case No. CV 09-519-N-BLW <br><br> RESPONSE TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT FILED ON SEPTEMBER 3, 2010 |

PLAINTIFF offers the following points and authorities for consideration by the court. In the interest of brevity, plaintiff will avoid citation to the well-established case law surrounding Summary Judgment with which the court is already familiar.

**FACTUAL ISSUES PREVENTING SUMMARY JUDGMENT**

This case arises out of the death of Bryan J. Kelly, a candidate for accidental death benefits under two policies issued by the Defendant. Plaintiff is the designated beneficiary of the policies. Ex. A to Tubbs Decl. On the day in question, Mr. Kelly told the Plaintiff it was a beautiful out, and he was going to target shoot at a makeshift neighborhood gun range while she was at work. He asked her to bring home a pizza for dinner. When Bryan did not return home when expected, the Plaintiff notified a neighbor who located Bryan at the range, lying on his stomach in a pool of blood. Targets had

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 1

been set up, and multiple casings were on the ground. Authorities soon discovered that a gunshot had caused Bryan's demise, but could not determine whether it had been intentionally or accidentally discharged. *See* Ex. B—D of Tubbs. Decl. As a consequence, the death certificate indicates the manner of death to be undetermined. Ex. E to Tubbs Decl.

Plaintiff submitted a claim for accidental death benefits, and upon reviewing the information previously detailed, Defendant denied that it had any obligation to tender payment or conduct any further investigation into the matter unless and until Plaintiff provided documentation establishing coverage. Ex. F to Tubbs Decl. Defendant also advised Plaintiff that she had 60 days in which to appeal the coverage decision. Plaintiff retained counsel who submitted an appeal on her behalf. The appeal delineated facts supporting the death as being an accident as opposed to suicide, advised the insurer of the legal presumption against suicide, and cautioned the insurer that further investigation was warranted. Ex. 3 to McCrea Decl. In response, Defendant restated and rehashed its previous basis for denial, asserting nothing more than an inability to determine the exact nature and manner of the death. Defendant made no attempt to justify its position or address the implications Idaho law had on its claims handling practices, namely its lack of a reasonable investigation and its self-serving denial. Ex. G to Tubbs Decl.

Plaintiff received the denial from the appeals department in late August and initiated this action the following month. *Compare* Ex. G to Tubbs Decl. *with* Plf's Complt. Plaintiff retained an expert familiar with the insurance industry and applicable standards to review Defendant's conduct and its complete claim file on this matter. Mr. Paul authored a report detailing his findings, which consisted of the following opinions:

A. The Hartford Totally Failed, Actually Refused, to Conduct a Reasonable Investigation Based Upon All Available Information, Hartford then refused to pay the claim even though this investigation was lacking.

B. Hartford failed and refused to base its decisions on the limited investigation it actually had received.

C. Hartford lacked reasonable standards for investigation.

___

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 2

Owens & Crandall
**Attorneys at Law**
1859 North Lakewood Drive, Suite 102
Coeur d' Alene, Idaho 83814
(208) 667-8989   FAX #(208) 667-1939

    D. Hartford's explanations failed to meet industry or legislative standards.

    E. Hartford unreasonably and intentionally denied payment of a valid claim, the denial was not the result of a fairly debatable issue, and the denial was not the result of mistake.

Ex.2 to Paul Aff. Defendant has neither identified nor disclosed an expert in claims handling practices to rebut the conclusions Mr. Paul has reached.

    Since benefits are payable in the event Mr. Kelly's death was accident related, Defendant must establish that he committed suicide to avoid liability under the insuring agreement. It insinuated as much prior to suit being filed and has embarked on a campaign since then to construct inferences from the facts upon which an elaborate scheme on the part of the deceased is revealed to make his death appear to look like an accident. Such conduct is reprehensible. As a result of the Defendant's bad faith acts, Plaintiff has been stuck in an endless churning of grief, unable to move forward from Bryan's death, but forced to have her memories tainted by Defendant's allegations. Plaintiff has experienced fatigue, listlessness, sleeplessness, nausea, distress, anxiety, embarrassment, humiliation, anger, blame, and self-doubt. She cries regularly and for no apparent reason. She suffers from emotional dysregulation, has little to no appetite for food or for life, and has no one with whom she can process her feelings because of the extreme anxiety she experiences for having to defend Bryan's reputation. Stated simply, she feels isolated, empty, and robbed of any peace and closure she might have gained at this point from Bryan's passing. Kelly Aff.

## **DEFENDANT'S LEGAL ARGUMENTS**

    Defendant has correctly stated the prima facie elements for bad faith claims under Idaho law, namely that (1) coverage was not fairly debatable; (2) that based on the evidence before it, the insurer intentionally and unreasonably withheld benefits; (3) that the delay was not the result of a good faith mistake; and (4) that the resulting harm is not fully compensable under contract principles. Def's Mem. in Support of Mot. for Summ. J. at 5. Defendant challenges only Plaintiff's ability to prove the first and fourth

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 3

elements, so those will be the focus of this opposition.  Defendant further seeks dismissal of Plaintiff's 5th cause of action—Consumer Protection Act Violations and Deceptive Business Practices.

In making its case for summary judgment, Defendant relies on irrelevant information obtained after this suit was filed and completely ignores unfavorable controlling legal precedent.  Simply put, these issues cannot be decided by way of summary judgment.

### A. Sufficient evidence exists for a jury to conclude that Plaintiff's claim for life insurance benefits was *not* fairly debatable at the time of the denial.

Defendant likens this matter to *Roper v. State Farm Mut. Auto. Ins. Co.*, 131 Idaho 459, 958 P.2d 1145 (1998), but its holding has no application here.  The insurance claimant in *Roper* sought to have certain medical bills covered by his carrier following a motor vehicle accident.  *Id.* at 460, 958 P.2d at 1146.  Upon receipt of the claim and in light of both pre and post accident conditions and injuries, the carrier undertook an extensive investigation, including reviewing numerous medical records and opinions and conducting its own medical examinations.  *Id.* at 462, 958 P.2d at 1148.  As a result and considering the complex medical details the claim involved along with the divergent opinions of numerous doctors, there could be no real dispute that Roper's claim was "fairly debatable."  *Id.* at 462, 958 P.2d at 1148.  State Farm had relied on this investigation when it decided to pay a portion of the bills (some $7,000 worth) and deny the remainder (of about $3,000).  *Id.* at 460, 958 P.2d at 1146.  For these reasons, the Idaho Supreme Court upheld the district court's conclusion that State Farm had not committed bad faith.  *Id.* at 462, 958 P.2d at 1148.

Defendant further relies on *Reyerson v. Nat'l Union Fire Ins.*, 2008 WL 974922 (D. Idaho April 8, 2008) and *Rice v. Union Central Life Ins. Co.*, 2006 WL 3523538 (D. Idaho Dec. 6, 2006), which are also distinguishable.  In *Reyerson*, the insurance claimant sought coverage of certain bills, including some for psychological care, following an accident.  In dismissing the claimant's bad faith action, the district court noted, "A review

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 4

Owens & Crandall
Attorneys at Law
1859 North Lakewood Drive, Suite 102
Coeur d' Alene, Idaho 83814
(208) 667-8989   FAX #(208) 667-1939

of the entire case reveals that National Union paid tens of thousands of dollars over several years for Reyerson's care, and that National Union paid the vast majority of Reyerson's claims, both in number and amount, without contest." *Reyerson*, 2008 WL 974922 *7. The existence and extent of investigation conducted by the insurer in *Reyerson* could not reasonably be questioned.

Similarly, the insured in *Rice* submitted a claim for disability benefits, alleging he could not continue practicing as a dentist given his allergies to workplace substances and severe eczema. The carrier commenced an investigation, which first consisted of obtaining financial information. Next, the carrier had its medical department review the claim, and upon its recommendation that an independent medical examination take place, one was conducted 18 days later. *Rice*, 2006 WL 3523538 *2. In fact, the carrier continued its investigation until the insured ceased cooperating. Then, and only once suit had been filed, did the carrier deny benefits. *Id.* *3. Based on the information gathered during the investigation, which included competing conclusions from medical experts, the district court concluded the claim was fairly debatable. *Id.* *4.

Unlike the conclusions in the above cases, however, the facts of this matter most closely resemble those of *Lucas v. State Farm Fire & Cas. Co.*, 131 Idaho 674, 963 P.2d 357 (1998). After sustaining injuries in a motor vehicle accident, Lucas submitted his medical bills to State Farm, pursuant to the medical payments coverage under his policy. *Id.* at 674—75, 963 P.2d at 357—58. State Farm had issues as to whether Lucas's back and neck pain were related to the accident or to pre-existing conditions. Consequently, it undertook an investigation, including reviewing medical records and conducting an independent medical exam, but ultimately denied the claim. *Id.* at 676, 963 P.2d at 359. In determining whether the claim was *not* fairly debatable, the Idaho Supreme Court opined, "None of the doctors were able to definitively state that Lucas's neck condition was pre-existing or related to the accident." *Id.* at 678, 963 P.2d at 361. Lucas's own health care provider, however, attributed the surgery to the accident. Therefore, Lucas had sufficient evidence on which a jury could determine that his claim was not reasonably in dispute. *Id.*, 963 P.2d at 361.

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 5

In the current matter, at the time this claim was under review, *none* of the investigating officials could definitively state whether the firearm that delivered the fatal shot was intentionally or accidentally fired.[1] Combining this fact with the legal presumption against suicide (or even with the lack of a reasonable investigation), and one must conclude that the claim was not reasonably debatable at the time of denial. Rather, the Defendant conducted a cursory review, concluded Plaintiff had not met her burden, and thereupon considered the matter complete, via a denial with a right to appeal within 60 days. *See* Ex. F to Tubbs Decl. The law does not countenance such conduct and, clearly a claim for bad faith sufficient to withstand summary judgment exists here.[2]

Under Idaho law, the beneficiary of a life insurance policy is entitled to the benefit of a presumption that a person would not take his or her own life. Said presumption was first formally recognized in *Haman v. Prudential Ins. Co.*, 91 Idaho 19, 22, 415 P.2d 305, 308 (1966) in which the decedent was found dead after going outside with a small rifle to scare off a dog. In reviewing the case facts, the court noted as follows, "No one saw Mrs. Haman at the time the fatal shot was fired, and there was no evidence that there was any third person involved. It is thus obvious that under the circumstances death resulted from either an accidental shooting, or as a result of suicide." *Id.*, 415 P.2d at 308. The court proceeded to examine the relevant evidentiary presumption, to wit:

> Related to the presumption against suicide is a presumption well recognized by case law that when a plaintiff or beneficiary has proven that death of the insured resulted exclusively from external and violent means but is unable to introduce proof to the effect that death resulted from accidental means, a presumption arises that the external violence was due to accidental means. This latter presumption in favor of death by accidental means has been recognized and applied in . . . [citations omitted].

---

[1] Following discovery, not much has changed. Defendant's experts have constructed quite a web of conjecture and innuendo to support its suicide theory, however.
[2] For additional discussion on Defendant's bad faith conduct, including an analysis that the claim was not fairly debatable at the time of denial, see the Affidavit of Irving "Buddy" Paul, filed by Plaintiff in conjunction with her Motion to Amend the Complaint to Include a Claim for Punitive Damages.

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 6

Owens & Crandall
Attorneys at Law
1859 North Lakewood Drive, Suite 102
Coeur d' Alene, Idaho 83814
(208) 667-8989   FAX #(208) 667-1939

*Id.* at 23, 415 P.2d at 309. This presumption is related to the presumption of ordinary care, both of which stem from "the principle that a person will maintain the ordinary instincts for self-preservation." *Id.* at 24, 415 P.2d at 310. The court also favorably referenced the following language, which it described as expressing the difficulties inherent in such cases well:

> Cases of this sort have always been and will always be difficult. A human being is found dead; it is apparent that death was caused from a gunshot wound from a weapon found near by, and that this gun was fired through some act of the deceased. But the question at once arises as to whether the wound was voluntarily inflicted with the intention of self-destruction or was the result of some unfortunate and involuntary mischance in the handling of the weapon. No other person has witnessed the event; there is no direct evidence to tell us of what really happened. We can seek the answer only through evidence of all the surrounding circumstances from which inferences may properly be drawn. And from these it is rare that conclusive or entirely convincing results are obtained.

*Id.* at 24, 415 P.2d at 310. Last, the *Haman* court concluded that even when the Plaintiff bears the burden of proving an accidental death,[3] he is entitled to rely upon the presumption against suicide. *Id.* at 26, 415 P.2d at 312.[4]

This presumption is recognized in the overwhelming majority of jurisdictions. *See, e.g., Proof of death or injury from external and violent means as supporting presumption or inference of death by accidental means within policy of insurance*, 12 ALR 2d 1264 (orig. 1950). In *Met. Life. Ins. Co. v. Plumstead*, 142 S.E.2d 429, 431 (Ga. App. 1965), for instance, the court stated, "According to the great weight of authority, in determining whether or not the insurer is liable under these circumstances, where the

---

[3] Plaintiff does not concede that such burden applies here. Generally speaking, a plaintiff bears the burden of proof that a particular claim comes within the policy, but a Defendant bears the burden of proof when it comes to exclusions. *See Harman V. Northwestern Mut. Life Ins. Co.*, 91 Idaho 719, 429 P.2d 849 (1967). Suicide is an exclusion to the relevant policy. *See* Ex. A to Tubbs Decl. at 20 & 40 ("The policy does not cover any loss resulting from: 1.iIntentionally self-inflicted injury, suicide or attempted suicide, whether sane or insane . . . .").

[4] The *Haman* court was reviewing a jury verdict in Plaintiff's favor, which rested in part upon the evidentiary presumption. The Defendant had presented contrary evidence, but because reasonable minds could differ as to the conclusions to be drawn from the evidence opposing the presumption, the matter was appropriately submitted to the jury who was instructed on the presumption. In the current matter, Defendant had *no* contrary evidence. It had no evidence at all, which it freely admitted in its denial letter.

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 7

Owens & Crandall
**Attorneys at Law**
1859 North Lakewood Drive, Suite 102
Coeur d' Alene, Idaho 83814
(208) 667-8989   FAX #(208) 667-1939

policy provides for benefits in case of death by external, violent, and accidental means, where the means producing death were external and violent, there is a presumption, in the absence of evidence to the contrary, that the means were also accidental." Simply put, one must *intend* to commit suicide. If the death did not occur by intent, it is "an accident." *Id.*

At the very least, it was incumbent on the Defendant to conduct a reasonable investigation before denying Plaintiff's claim. Not only is this a legislative directive in Idaho (I.C. § 41-1329(4)), but it is a necessary proof element of a "fairly debatable" claim. When the reasonableness of the investigation is in question and the inference to be drawn there from is that the investigation was not completed in good faith, the Plaintiff has prima facie presented a bad faith claim sufficient for jury determination. *State Farm Fire & Cas. Co. v. Trumble*, 663 F. Supp. 317, 320 (D. Idaho 1987). In the present matter, Defendant did nothing with its questions. It failed to conduct any investigation, essentially refusing to acknowledge that Plaintiff's claim had any merit. It did not ask for the decedent's medical records, which may have revealed whether the decedent was depressed or aware of any significant disease process; It did not conduct a forensic examination of the weapon to determine its peculiarities or defects; It did not interview Mr. Kelly's family and friends. *See* Ex. 2 to Paul Aff. In Idaho, an insurer *cannot* deny a claim without conducting a reasonable investigation. For this reason alone, genuine issues of material fact exist as to whether Plaintiff's claim for life insurance benefits was fairly debatable at the time Defendant denied it, and summary judgment is wholly inappropriate. *See also id.*

### B. Plaintiff has experienced substantial emotional distress from Defendant's coverage denial and assertion that the decedent committed suicide.

"To prove the tort of insurance bad faith, an insured must prove that 'the resulting harm is not fully compensable by contract damages.'" *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 233 P.3d 1221, 1246 (2010). Defendant points to Plaintiff's Complaint and FRCP 26 disclosures as evidencing a lack of extra-contractual

_____
RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 8

damages.[5] Such is not the case, however, and Defendant's lack of diligence in discovery does not equate to a non-existence of resulting harm. Defendant has not solicited in either written discovery or through deposition questions the existence and extent of Plaintiff's claimed damages. Yet it is hard to believe that it can persuasively argue that alleging and attempting to prove that her husband committed suicide has not left Plaintiff in severe emotional distress.

Such damages are recognized as a type of resulting harm for which damages can be awarded. *See, e.g., id.*, 233 P.3d at 1246—48. "Emotional distress 'includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.'" *Id.*, 233 P.3d at 1246. Impugning one's character and drawing one into a prolonged dispute while grieving the loss of a loved one is also the type of extreme conduct which one can reasonably conclude would result in emotional distress. *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 220, 923 P.2d 456, 465 (1996).

In the matter before the court, Plaintiff has submitted evidence that she has experienced sleeplessness, loss of appetite, distress, humiliation, embarrassment, anxiety, blame, and an inability to move forward with the grieving process because of the Defendant's conduct. Aff. of Kelly. Construing this evidence in the light most favorable to the non-moving party, which this court is constrained to do, reasonable minds can certainly conclude that the Plaintiff has experienced the type of substantial emotional distress that would support an award of damages against Defendant for its bad faith handling of her claim. As a result, the granting of summary judgment on such a basis would be improper.

### C. Plaintiff's Claim for CPA violations is subject to summary dismissal.

Defendant also seeks summary judgment on Plaintiff's consumer protection act claims. Following a review of the authorities on which Defendant relies, Plaintiff

---

[5] But see Plaintiff's Amended FRCP 26(a) Disclosures, filed as an attachment hereto and designated as Exhibit 5.

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 9

Owens & Crandall
Attorneys at Law
1859 North Lakewood Drive, Suite 102
Coeur d' Alene, Idaho 83814
(208) 667-8989  FAX #(208) 667-1939

concedes that such a dismissal is appropriate at this time so long as the pleadings that remain sufficiently entitle Plaintiff to bring and present her tort of bad faith action. Plaintiff should not be limited to contractual damages that would stem from the breach of the covenant of good faith and fair dealing. As an alternative, Plaintiff would seek leave to file an amended Complaint to make evident her intent to seek extra-contractual damages for the tort of bad faith against Defendant. Plaintiff attempted to include such a claim in her 5th Cause of Action, but to the extent that action includes the Idaho Consumer Protection Act as a separate basis for recovery, that deficiency should be corrected and appropriate leave to amend granted.

## CONCLUSION

Clear and undeniable factual issues exist with respect to Defendant's bad faith, specifically that the claim was not fairly debatable when it was denied and that Plaintiff has suffered extra-contractual damages. Therefore, said issues cannot be decided in a summary fashion. The trier of fact will necessarily need to hear all evidence in order to make the appropriate determinations. It is not for this court to weigh the evidence and rubber stamp the carrier's conduct. So long as there is conflicting evidence upon which reasonable minds may differ, Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Bad Faith must be denied.

RESPECTFULLY SUBMITTED this 27th day of September, 2010.

OWENS & CRANDALL, PLLC

  s/Regina M. McCrea
REGINA M. MCCREA, ISB #6845
Attorney for Plaintiff
Owens & Crandall, PLLC
8596 N. Wayne Drive, Suite A
Hayden, Idaho 83835
Telephone: (208) 667-8989
Fax: (208) 667-1939
E-mail: regina@cdalawyer.com

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 10

## CERTIFICATE OF TRANSMITTAL

I hereby certify that a true and correct copy of the foregoing was, on the 27th day of September 2010, sent electronically to the following:

Steven D. Robinson ................................................................sdrobinson@karrtuttle.com
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA 98101-3028

    s/Regina M. McCrea
of Owens & Crandall, PLLC

RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT- 11